UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LORI POLER,

                                                            Plaintiff,        18-CV-1298

v.                                                            DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                          Defendant.
_____

## INTRODUCTION

Plaintiff Lori Poler brought this action pursuant to Title XVI of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI"). ECF No. 1. Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 14, 17. For the reasons that follow, Plaintiff's motion for judgment on the pleadings (ECF No. 14) is GRANTED, the Commissioner's motion (ECF No. 17) is DENIED, and the matter is REMANDED for further administrative proceedings.

## BACKGROUND

On August 26, 2014, Plaintiff filed an application for SSI alleging disability beginning on December 22, 2008. Administrative Record, ECF No. 9 ("Tr."), at 577-85. After the application was denied, Plaintiff timely requested a hearing. Tr. at 469-71.

On October 20, 2016, Plaintiff first appeared with her attorney, Jeanne Murray, Esq., and testified at a hearing before Administrative Law Judge Sharon Seeley ("the ALJ"). Tr. at 1524-82. Because a Vocational Expert ("VE") could not be reached by telephone, the hearing was rescheduled. The hearing eventually took place on July 24, 2017, and Esperanza Distefano, the VE, testified at the hearing. Tr. at 432-41. The ALJ issued an unfavorable decision on October

1

13, 2017. Tr. at 398-17. Plaintiff then timely requested review by the Appeals Council and submitted several hundreds of pages of additional medical records for its consideration. Tr. at. 6-188, 191-94. On September 28, 2018, the Appeals Council denied review of the records because they did not show a reasonable probability that their review would change the outcome of the ALJ's decision (records dated April 17, 2009 through December 21, 2017), and because they did not relate to the period at issue (records dated January 3, 2018 through July 12, 2018). Tr. at 2. The Appeals Council's denial made the ALJ's decision the final decision of the Commissioner. Tr. at 1-4. Plaintiff subsequently filed this lawsuit.

## LEGAL STANDARD

### I. District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b).[1] If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the

---

[1] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

3

Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 28, 2014. Tr. at 400. At step two, the ALJ found that Plaintiff suffered from several severe impairments: degenerative disc disease and spondylosis of the cervical spine; mild bilateral carpal tunnel syndrome; right chondromalacia patella status post right knee arthroscopic chondroplasty; asthma; bipolar disorder; and generalized anxiety disorder. Tr. at 401. The ALJ proceeded to the third step of the analysis and found that the severity of Plaintiff's impairments did not meet or equal the criteria of any listing. Tr. at 402. The ALJ then determined that Plaintiff retained the RFC to perform sedentary work with several limitations. Tr. at 403. Specifically, she found that Plaintiff could alternate between sitting and standing while remaining on task; frequently handle, finger, feel, and reach overheard with her bilateral upper extremities, and work in an environment with no exposure to smoke, fumes, or other irritants. *Id.* The ALJ further determined that Plaintiff can understand, remember, carry out simple, routine, and repetitive tasks, and maintain attention and concentration sufficient for such tasks. Lastly, the ALJ found that Plaintiff can work in an environment with no supervisory responsibilities or independent decision-making, have no more than minimal changes

in work process, routines or setting, and only occasional interaction with coworkers and the general public. *Id.*

At step four, the ALJ found that Plaintiff did not have past relevant work. Tr. at 416. The ALJ then proceeded to step five, where she determined that there were jobs in the national economy that a person of Plaintiff's age, education and work experience could perform, such as a document preparer, table worker, cutter and paster, and surveillance system monitor. Tr. at 416-17. Accordingly, the ALJ concluded that Plaintiff was not disabled.

## II. Analysis

Following the ALJ's decision, Plaintiff submitted hundreds of pages of medical records to the Appeals Council, which denied review based on the fact that there was no reasonable probability that the records would change the outcome of the ALJ's decision and because they did not relate to the period at issue. Tr. at. 2. Plaintiff argues that it was error for the Appeals Council to deny review of records dated January 3, 2018 through July 12, 2018, which contained evidence of her diagnoses of fibromyalgia and latest carpal tunnel surgery, solely on the basis of timing. ECF No. 14-1 at 14-17.[2] Plaintiff submits that such records were new, material, related to the period at issue, and evidenced her diagnosis of fibromyalgia, the absence of which the ALJ referenced in concluding that fibromyalgia was a non-medically determinable impairment. Plaintiff also argues that these records demonstrate that both Plaintiff's fibromyalgia and carpal tunnel impairment were more serious than the ALJ had originally thought. *Id.* The Commissioner objects, arguing that Plaintiff's records lacked significance and that they would not have changed

---

[2] Plaintiff has identified several additional reasons why she contends the matter should be remanded. ECF No. 10-1. However, because the Court has determined, for the reasons that follow, that remand of this matter for further administrative proceedings is necessary, it declines to address Plaintiff's remaining arguments. *See Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to address Plaintiff's remaining arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined that remand was warranted).

the outcome of the ALJ's highly restrictive RFC, which accounted for Plaintiff's symptoms associated with the carpal tunnel syndrome and her alleged fibromyalgia. ECF No. 17-1 at 13-14.

The Appeals Council must consider additional evidence that a claimant submits after the ALJ's decision if it is new, material, and relates to the period on or before the ALJ's decision." 20 C.F.R. § 416.1470 (a)(5), (b); *see also Hollinsworth v. Colvin*, No. 15-CV-543-FPG, 2016 WL 5844298, at *3 (W.D.N.Y. Oct. 6, 2016). Evidence is "new" "when it has not been considered previously in the administrative process." *Pferrer-Tuttle v. Colvin*, No. 1:1-CV-00727(MAT), 2015 WL 5773524, at *5 (W.D.N.Y. Sept. 30, 2015). Here, the post-hearing treatment records from University of Buffalo Neurosurgery and Niagara Falls Memorial Medical Center submitted by Plaintiff to the Appeals Council were "new" because they did nor exist until after the ALJ's decision, and, as such, were not merely cumulative of other evidence in the record.

Evidence is "material" when "it is relevant to the claimant's condition during the time period for which benefits were denied and probative, meaning there is a reasonable probability that it would have influenced the Commissioner to decide the claimant's application differently." *Pennetta v. Comm'r of Soc. Sec.*, No. 18-CV-6093-FPG, 2019 WL 156263, at *3 (W.D.N.Y. Jan. 10, 2019) (internal citations omitted); *see also Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) ("The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently.")

Here, the Court finds that treatment records of Dr. Wong at University of Buffalo Neurosurgery were material because had the ALJ considered them, a reasonable probability exists that the ALJ's decision might have been different, particularly in light of her step two determination. In her decision, the ALJ determined that "the medical evidence in the record does not establish a diagnosis of fibromyalgia in accordance with the requirements of SSR 12-2p." Tr.

at 401. Social Security Ruling ("SSR") 12-2p establishes the guidelines for an ALJ to determine whether a claimant's fibromyalgia is a medically determinable impairment, and, if so, to consider its symptoms in connection with the claimant's disability application. SSR 12-2P, 2012 WL 3104869, at * 2-3 (SSA July 25, 2012). It specifically provides that in making her determination, the ALJ cannot solely rely on a diagnosis of fibromyalgia, and must also have the evidence documenting a physician's review of the claimant's medical history and records of a physical exam conducted in accordance with one of the two criteria for diagnosing fibromyalgia set by the Commissioner.[3] *Id.*

Here, Dr. Wong's treatment records indicate that Plaintiff's symptoms of generalized pain were consistent with the diagnosis of fibromyalgia. Tr. at 195-96. She identified multiple points of tenderness in Plaintiff's neck, upper and lower back, arms, and legs that Plaintiff demonstrated during her examination, and indicated that Plaintiff tested positive for such symptoms of fibromyalgia as weight loss, night sweats, fatigue, weakness, shortness of breath, wheezing, nausea, vomiting, difficulty swallowing and urinating, pain and stiffness of joints, arthritis, muscle weakness, numbness, headaches, depression, and anxiety. Tr. at 195. While determining that Plaintiff's symptoms were consistent with fibromyalgia, cervical disc degeneration, and cervical spondylosis, Dr. Wong specifically distinguished Plaintiff's fibromyalgia-related symptoms from

---

[3] The first set of criteria used by an ALJ to consider whether fibromyalgia is a medically determinable impairment is based on the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia, which provides that the ALJ may find a claimant's fibromyalgia to be a medically determinable impairment if the claimant demonstrates a history of: (1) widespread pain in all quadrants of the body that has persisted for at least three months, (2) at least eleven positive bilateral tender points found during claimant's physical examination, and (3) evidence that other disorders that could cause similar symptoms, signs, or co-occurring conditions were excluded. SSR 12-2P, 2012 WL 3104869, at *2-3 (SSA July 25, 2012).
 The second set is based on the 2010 ACR Preliminary Diagnostic Criteria, which provides that the record must show a history of: (1) widespread pain, (2) repeated manifestations of six or more fibromyalgia symptoms, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. *Id.*

her pains associated with the other impairments by noting that Plaintiff's symptoms of generalized pains were secondary to Plaintiff's fibromyalgia. Tr. at 196. In addition to diagnosing Plaintiff with fibromyalgia, Dr. Wong's records are significant because they discuss the effect of Plaintiff's pain caused by fibromyalgia on her functioning. Tr. at. 194. Therefore, Dr. Wong's diagnosis of fibromyalgia, together with her examination notes describing multiple tender points and Plaintiff's symptoms specific to fibromyalgia, satisfy at least one of the criteria for diagnosis of fibromyalgia required by SSR 12-2p. As such, instead of lacking significance as the Commissioner suggests, such records could have had the exactly opposite effect on Plaintiff's disability claim by influencing the ALJ to find Plaintiff's fibromyalgia a medically determinable impairment.

This is particularly important because by finding that fibromyalgia was not a medically determinable impairment in step two of the sequential analysis, the ALJ had no legal basis upon which to find whether fibromyalgia was severe or non-severe, and as such, was unable to consider Plaintiff's statements about her symptoms and limitations in light of her fibromyalgia diagnosis. *See* 20 C.F.R. §416.920(a)(4)(ii)) ("[o]nly medically determinable impairments may be considered severe or non-severe"); *Cooper v. Comm'r of Soc. Sec.*, No. 17-CV-1058-MJR, 2019 WL 1109573, at *5 (W.D.N.Y. Mar. 11, 2019) ("[A]n ALJ may credit a claimant's statements about her symptoms and functional limitations only if the impairment to which they relate is medically determinable."). This is precisely why the Commissioner's argument that the lack of evidence to substantiate fibromyalgia did not prevent the ALJ from considering Plaintiff's complaints of pain and assigning specific limitations associated with it is flawed. "[B]ecause the ALJ concluded that [Plaintiff's] fibromyalgia is not a medically determinable impairment, she had no basis to credit [Plaintiff's] statements regarding her fibromyalgia-related symptoms in the remainder of her decision." *Id.* As a result, the ALJ did not credit such symptoms, nor incorporate any related

8

limitations associated with fibromyalgia into her RFC determination, despite substantial evidence in the record of Plaintiff suffering from multiple fibromyalgia symptoms.[4] *See, e.g.*, Tr. at 11-12, 31, 39, 66-72, 82-87, 90-91, 104, 116-17, 144, 174, 177, 191, 194, 197, 184, 216, 223-26, 260, 267, 671, 673-79, 687-88, 711, 713, 716, 719, 722-23, 727-28, 732, 734-35, 737, 739, 745-46, 757, 764, 803, 806-07, 831-34, 843, 850, 853, 857, 1030, 1034, 1036-37, 1039, 1050, 1052, 1057, 1063, 1067, 1068, 1070-72, 1075-76, 1096, 1100, 1117, 1121, 1130-32, 1140-47, 1152, 1158, 1167-68, 1171-73, 1175, 1179, 1183, 1347, 1366, 1376, 1383, 1388, 1394 (treatment records demonstrating Plaintiff's complaints of chronic, throbbing and intermittent pain throughout her body; bilateral knee pain; radiating shoulder, low back and neck pain; back pain with sciatica; stabbing low back pain causing numbness in Plaintiff's lower extremities; extreme pain from elbows to hands; pain level ranging from 6/10 to 10/10; joint pain; urinary retention; weight gain and loss; night sweats; chills; nausea; vomiting; diarrhea; chest pains; severe depression; anxiety; insomnia; memory loss; and records demonstrating Plaintiff's intake of Lyrica and Gabapentin[5]); Tr. at 69, 166, 174, 178, 197, 727-28, 808, 814, 825, 834, 841, 1046, 1060, 1117, 1180, 1366 (records discussing aggravation of Plaintiff's symptoms by sitting, walking, standing, lying down and requiring her to wear a brace when walking); Tr. at 1526, 1539-40, 1542-43, 1546-47, 1551-

---

[4] SSR 12-2p indicates that the ALJ may consider "somatic symptoms" in making a determination whether fibromyalgia is a medically determinable impairment, which include "muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms." SSR 12-2P, at *3.

[5] "Gabapentin . . . is sometimes helpful in reducing fibromyalgia symptoms, while . . . . Lyrica was the first drug approved by the Food and Drug Administration to treat fibromyalgia." https://www.mayoclinic.org/diseases-conditions/fibromyalgia/diagnosis-treatment/drc-20354785 (last visited on April 9, 2020). The record contains numerous references of Plaintiff taking Gabapentin, but not receiving significant relief from it, and requesting refills of Lyrica prescription to manage her fibromyalgia. Tr. at 143, 149, 152, 156-58, 162-66, 171, 174, 929.

52, 1554-57, 1562-63, 1576-77 (hearing testimony about Plaintiff's limited daily activities and inability to work due to fibromyalgia, carpal tunnel syndrome, neck pain, and other symptoms).

Importantly, the record contains several references to fibromyalgia diagnosis that the ALJ completely ignored in her analysis. Tr. at 45, 60, 1097, 1100, 1347, 1375, 1386. Most notable of them are treatment notes of Plaintiff's then primary care provider, Kathleen Ventry, NP, ("Ventry"), who on January 27, 2016 found that Plaintiff had 14 out of 18 tender points, and stated that she would consider a diagnosis of fibromyalgia if the results of MRI testing of Plaintiff's spine were negative for disc herniation, stenosis, or narrowing. Tr. at 1068. Following the visit, Plaintiff underwent an MRI testing of her spine, which did not reveal any abnormalities. Tr. at 831. When Plaintiff returned to Ventry's office on March 3, 2016 to discuss the MRI results, Ventry, while noting Plaintiff's existing pain and lack of relief from Gabapentin, did not address Plaintiff's diagnosis of fibromyalgia, and, instead, suggested that Plaintiff seek pain management referral. Tr. at 834.

As for the records of Plaintiff's carpal tunnel release surgery on her right wrist, the Court finds that they too are "material" because they relate to Plaintiff's mild bilateral carpal tunnel syndrome, which the ALJ found to be severe. Tr. at 401. The ALJ determined that Plaintiff was able to perform sedentary work and could "frequently handle, finger, feel and reach overhead with the bilateral upper extremities." Tr. at 403. Because "[m]ost unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions[,]" *see* SSR 83-10, 1983 WL 31251, at *5 (SSA Jan. 1, 1983), and because they define "frequent" as something that occurs from one-third to two-thirds of the time, *id.*, a reasonable probability exists that the ALJ's decision about Plaintiff's ability to frequently handle, finger and feel with her upper extremities could have been different had the Appeals Council considered evidence of Plaintiff's latest carpal tunnel surgery.

It was error for the Appeals Council to deny review of Plaintiff's records solely on the basis of timing. The Second Circuit has held that medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing. *Pollard*, 377 F.3d at 193. This is because "[e]xaminations and testing conducted after the ALJ's decision is rendered may still be relevant if they clarify a pre-hearing disability and/or diagnoses." *Carrera v. Colvin*, No. 1:13-cv-1414 (GLS/ESH), 2015 WL 1126014, at *8 (N.D.N.Y. Mar. 12, 2015) (citations omitted). Here, the Court finds that the Appeals Council's boilerplate and summary refusal to review records from University at Buffalo Neurosurgery and Niagara Falls Memorial Medical Center because they did not relate to the period at issue was erroneous. *See Webster v. Colvin*, 215 F. Supp. 3d 237, 242-43 (W.D.N.Y. 2016) ("[T]the Appeals Council's categorical refusal to consider new and material evidence solely because it was created after the ALJ's decision can constitute reversible error."). Although the new evidence consisted of treatment records generated after the ALJ rendered her decision, this does not mean that they had no bearing on the ALJ's evaluation of Plaintiff's claims. To the contrary, Dr. Wong's treatment records support many of Plaintiff's prior contentions, which strongly suggest that her fibromyalgia was far more serious than previously thought. *See Sergenton v. Barnhart*, 470 F.Supp.2d 194, 204 (E.D.N.Y. 2007) (remand was warranted to consider post-hearing diagnostic evidence suggesting that the claimant's impairment was substantially more severe than previously diagnosed).

As Dr. Bax's records of Plaintiff's most recent carpal tunnel release surgery, these records could demonstrate that Plaintiff's carpal tunnel impairment of the right wrist worsened over time, and, thus, these records may be irrelevant to Plaintiff's carpal tunnel syndrome during the time for which benefits were denied. *Bluman v. Colvin*, No. 15-CV-627-FPG, 2016 WL 5871346, at *4 (W.D.N.Y. Oct. 7, 2016) ("A post-determination diagnosis may indicate only a more recent onset

of disability" if Plaintiff's condition has worsened with time). "It is equally possible, however, that the new evidence clarifies a pre-hearing disability and suggests that [Plaintiff's] condition was more serious than previously thought during the relevant time period." *Id.* Specifically, while a number of treatment records refer to the carpal tunnel impairment on Plaintiff's left wrist (Tr. at 45, 60, 87, 1168, 1171, 1188), the record, however, also shows that Plaintiff often complained about having pain in her right wrist. Tr. at 60, 116, 208, 216, 257, 260, 1198, 1375, 1542. Additionally, aside from Plaintiff's subjective complaints, the record contains the results of an EMG testing showing the existence of mild bilateral carpal tunnel syndrome. Tr. at 1072, 1198. Therefore, it is entirely possible that Plaintiff's carpal tunnel condition of her right wrist was more serious that the ALJ previously thought. However, because of the Appeals Council's cursory, formulaic refusal to review Dr. Bax's records simply because they were issued after the ALJ's decision, the Court cannot determine whether the new evidence relates to the period at issue. Thus, remand is warranted to consider the evidence related to Plaintiff's latest carpal tunnel release surgery. *See Webster*, 215 F. Supp. 3d at 243 (remand for consideration of new and material evidence was necessary when the Court could not determine whether the records showed that Plaintiff's back condition was more serious than previously thought).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 14) is hereby GRANTED, and the Commissioner's motion for judgment on the pleadings (ECF No. 17) is DENIED. This case is hereby REMANDED to the Commissioner for further proceedings consistent with this order. The Clerk of Court is directed to enter judgment and close the case.

Dated: April 14, 2020
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge United States District Court